EDGAR BLACKBURN MOORE AND WIFE, DOROTHY PARKER MOORE v. CHARLES A. HUNTER; LOUISE MOORE NELSON AND HUSBAND, BRUCE NELSON; DOROTHY MOORE CASH AND HUSBAND, ARTHUR CASH; MARGARET MOORE LAWRENCE AND HUSBAND, WILLIAM H. LAWRENCE, III; RICHARD HARDESTY; PAULINE H. HARDESTY; CHARLES TRIPLETT HARDESTY, JR. AND WIFE, ELIZABETH MALONE HARDESTY; ROBERT HUNTER HARDESTY AND WIFE, MARY NELSON HARDESTY; CHARLES TRIPLETT HARDESTY, III AND WIFE, NELL JANE HARDESTY; FAIRFAX HARDESTY MONTGOMERY AND HUSBAND, RAY DUNCAN MONTGOMERY; RICHARD LOCKE HARDESTY AND WIFE, BARBARA HARDESTY; ANN HARDESTY BURGIN AND HUSBAND, H. C. BURGIN, JR.; SANDRA HARDESTY STEIN AND HUSBAND, JERRY STEIN; CHARLES TRIPLETT HARDESTY, IV; WAYNE NELSON HARDESTY; ROBIN JANE HARDESTY; THE MINOR AND UNBORN CHILDREN OF LOUISE MOORE NELSON, DOROTHY MOORE CASH AND MARGARET MOORE LAWRENCE, THROUGH THEIR GUARDIAN AD LITEM, PARKER WHEDON; THE MINOR AND UNBORN CHILDREN AND HEIRS AT LAW OF ALL THOSE CLAIMING UNDER AND THROUGH MARY MOORE HARDESTY, THROUGH THEIR GUARDIAN AD LITEM, DURANT WILLIAMS ESCOTT; AND ALL OTHER PERSONS, WHOSE NAMES ARE UNKNOWN, IN BEING OR NOT IN BEING, AND WHO HAVE OR MAY HAVE ANY INTEREST, PRESENT OR FUTURE, IN THE ESTATE OF EDGAR B. MOORE, DECEASED, THROUGH THEIR GUARDIAN AD LITEM, WILLIAM F. HULSE

No. 7926SC756

(Filed 6 May 1980)

**Wills § 35— vesting of fee unless plaintiff died without issue—time of vesting— testator's death determinative**

The trial court properly determined that, pursuant to testator's will which devised a tract of land in trust for plaintiff "to be his in fee simple unless he

shall die without leaving issue; and in the event he shall die without leaving issue, then the said land is to go to the children of my only sister, or their heirs," it was the intention of testator to devise a fee simple interest in the property to plaintiff, his son, subject only to the right of testator's wife to live on the property and to receive certain of the income from the property and subject to the stipulation that plaintiff not predecease testator without leaving issue; and where it was expressly and plainly declared on the face of the will that the limitation concerning plaintiff's death without issue was to take effect upon the death of the testator, G.S. 41-4 did not apply to make the limitation take effect at plaintiff's death.

APPEAL by defendants Hunter, Hardesty heirs and William F. Hulse, guardian ad litem, from *Griffin, Judge.* Judgment entered 21 June 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 28 February 1980.

The plaintiffs brought this action for specific performance of a contract to convey real estate and for a declaration of rights of Edgar Blackburn Moore under the will of the late E. B. Moore. In a contract dated 13 July 1973, the plaintiffs agreed to sell, and the defendant Charles A. Hunter agreed to buy, a parcel of land in Charlotte, North Carolina, "upon delivery of a Deed conveying good, fee-simple, marketable title to the buyer." At the time and place for closing of the agreement, the plaintiffs duly tendered to the defendant Hunter a warranty deed to the premises pursuant to the agreement, but the defendant Hunter, contending that the plaintiffs were unable to convey fee simple, absolute and marketable title to the premises, refused to accept the deed or to pay the balance of the purchase price.

The plaintiff Edgar Blackburn Moore obtained his interest in the land, a part of which he now seeks to convey to the defendant Charles A. Hunter, under the will of his father, E. B. Moore, who died 25 November 1916. Item IV of the will provided as follows:

Item IV. I give and devise to my executors hereinafter mentioned that tract or parcel of land in Mecklenburg County, North Carolina, known as the Selwyn Farm, made up of several tracts of land bought by me from Marsh and others, and containing about one hundred sixty-five (165) acres, and also that tract or parcel of land in Clarke County, Virginia near the West Virginia line, and containing about one hundred seventy (170) acres, which was purchased by me from Clark Purcell, to have and to hold the said land as trustees

upon the following trusts: That the entire income thereof shall be paid to my wife Beulah H. Moore until my son Edgar Blackburn Moore attains the age of twenty-one (21) years; that my said wife shall have the right to live upon either of the said places as she may choose and for such part of the time as she desires and shall be paid one-third (⅓) of the income of the said lands for and during the term of her natural life.

Subject to the foregoing provisions for my said wife my executors are hereby directed to hold the said land as trustees for my said son Edgar B. Moore to be his in fee simple unless he shall die without leaving issue; and in the event he shall die without leaving issue, then the said land is to go to the children of my only sister, or their heirs, to be divided among them equally, share and share alike, in fee simple.

The foregoing devise to my son is subject to the condition that the said land and any part thereof shall not be sold or encumbered for twenty-five (25) years from my death.

The trial court heard the case upon stipulated facts. The parties entered into the following stipulations:

1. The plaintiffs, Edgar Blackburn Moore and Dorothy Parker Moore, are husband and wife and are citizens and residents of the State of Virginia.

2. The defendant, Charles A. Hunter, is a citizen and resident of Mecklenburg County, North Carolina.

. . . .

6. All named parties to this action are over 18 years of age, are not under legal disability and are *sui juris*.

7. All parties are properly before the Court, and the Court has jurisdiction of the parties and of the subject matter, with the exception of the defendant, Arthur Cash, who since the inception of this litigation became absolutely divorced from Dorothy Moore Cash.

. . . .

9. Edgar B. Moore died a citizen and resident of Mecklenburg County, North Carolina, on November 25, 1916,

leaving a Last Will and Testament dated May 19, 1913, which was duly probated before the Clerk of Superior Court of Mecklenburg County on December 4, 1916, and is recorded in Book of Wills "R" at page 181 in the Office of the Clerk of Superior Court for the General Court of Justice of Mecklenburg County, North Carolina. A copy of said will is attached hereto and marked Exhibit A. Item IV of the will devised a tract of land in Mecklenburg County, North Carolina, known as the Selwyn Farm, in trust for the plaintiff, Edgar B. Moore, "to be his in fee simple unless he shall die without leaving issue; and in the event he shall die without leaving issue, then the said land is to go to the children of my only sister, or their heirs; to be divided among them equally, share and share alike, in fee simple."

10. At his death Edgar B. Moore was survived by a widow, Beulah H. Moore, a son, Edgar Blackburn Moore, who is one of the plaintiffs herein, and a sister, Mary Moore Hardesty. The said Beulah H. Moore subsequently died on December 23, 1948, and left by will her entire estate to the plaintiff, Edgar B. Moore.

11. The plaintiff, Edgar Blackburn Moore, is 81 years of age, having been born April 26, 1897, and he and his wife, Dorothy Parker Moore, have living three children, nine grandchildren, and one great-grandchild.

12. The names and marital status of the plaintiffs' three children are as follows:

| Name | Marital Status |
| --- | --- |
| Louise Moore Nelson | married to Bruce Nelson |
| Margaret Moore Lawrence | married to William H. Lawrence, III |
| Dorothy Moore Cash | divorced |

13. The only sister of Edgar B. Moore was Mary Moore Hardesty, who died February 20, 1934, and who had five children.

. . . .

17. Beulah H. Moore and Fergus Stikeleather were appointed Trustees under the will of Edgar B. Moore, deceased, but they never qualified as such and both of them are deceased.

. . . .

22. Approximately 149 acres remain of the property described as the "Selwyn Farm" in the will of E. B. Moore. The property lies inside the City of Charlotte, is zoned "R-9" for single-family residential purposes (9000 sq. ft. minimum lot size), is no longer suitable for farming, and is presently vacant, unproductive land.

23. On July 13, 1973, the plaintiffs, Edgar Blackburn Moore and Dorothy Parker Moore, entered into an agreement in writing with the defendant, Charles A. Hunter, whereby the plaintiffs agreed to sell and the defendant agreed to purchase a portion of the land heretofore referred to as the Selwyn Farm. . . .

24. The said contract required the plaintiffs to deliver a deed "conveying good fee simple, marketable title to the buyer or his assigns on closing date."

25. At the time and place for closing of the agreement, the plaintiffs were ready and willing to fulfill and perform the agreement in all respects on their part. The plaintiffs duly tendered to the defendants a warranty deed of the premises pursuant to the agreement, duly signed, sealed and acknowledged by the plaintiffs and demanded of said defendant the balance of the purchase price in accordance with the terms of said agreement, but the defendant, Charles A. Hunter, refused to accept the same and to pay the balance of the purchase price, contending that the plaintiffs are unable to convey fee simple absolute and marketable title to the premises.

The trial court ruled that plaintiff Edgar Blackburn Moore obtained a fee simple absolute title to the real property in question under the will of his father and ordered specific performance of the contract by defendant Hunter. The defendants Hunter, Hardesty heirs and William F. Hulse, guardian ad litem for all unknown persons having an interest in the property, appeal.

*Henderson, Henderson & Shuford, by David H. Henderson, for plaintiff appellees Moore.*

*Parker Whedon for defendant appellee Whedon, Guardian Ad Litem.*

*Williams, Kratt & Parker, by Neil C. Williams, Jr., for defendant appellant Hunter.*

*Durant Williams Escott for defendant appellants Hardesty heirs.*

*William F. Hulse for defendant appellant Hulse, Guardian Ad Litem.*

MARTIN (Harry C.), Judge.

This appeal presents the question whether plaintiffs can convey to defendant Hunter a good, fee simple, marketable title to the property described in the contract of sale. In order to answer this question, we must interpret the will of E. B. Moore. Although the specific provision in question is Item IV of the will, previously set out, in construing a will we are required to view it from its four corners. *Campbell v. Jordan,* 274 N.C. 233, 162 S.E. 2d 545 (1968).

The intention of the testator, gathered from the four corners of the instrument, is the "polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy." *Clark v. Connor,* 253 N.C. 515, 520, 117 S.E. 2d 465, 468 (1960).

> Isolated clauses or sentences are not to be considered by themselves, but the will is to be considered as a whole, and its different clauses and provisions examined and compared, so as to ascertain the general plan and purpose of the testator, if there be one. Ordinarily nothing is to be added to or taken from the language used, and every clause and every word must be given effect if possible. Generally, ordinary words are to be given their usual and ordinary meaning, and technical words are presumed to have been used in a technical sense. If words or phrases are used which have a well-defined legal significance, established by a line of judicial

decisions, they will be presumed to have been used in that sense, in the absence of evidence of a contrary intent. If, when so considered, the intention of the testator can be discerned, that is the end of the investigation.

*Id.* at 521, 117 S.E. 2d at 468-69.

The epigram of Sir William Jones, "no will has a brother," remains true today. Little or no aid can be derived by a court in construing a will from prior decisions in other will cases. It is not sufficient that the same words in substance, or even literally, have been construed in other cases. It often happens that identical words require very different constructions according to context and the peculiar circumstances of each case. *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298 (1957). "Probing the minds of persons long dead as to what they meant by words used when they walked this earth in the flesh is, at best, perilous labor." *Gatling v. Gatling,* 239 N.C. 215, 221, 79 S.E. 2d 466, 471 (1954). When engaging in this task, we should give effect to every clause, phrase and word in accordance with the general purpose of the will, where possible. *Morris, supra.* "Every string should give its sound." *Edens v. Williams,* 7 N.C. 27, 31 (1819).

In applying these rules of construction to the will of E. B. Moore, we are of the opinion that the result reached by the trial court is correct. We find that with respect to the property in Item IV of the will, the Selwyn Farm property and the Clarke County, Virginia, land, it was the intention of the testator to devise a fee simple interest in the property to his son, Edgar Blackburn Moore, subject only to the right of testator's wife, Beulah, to live on the property and to receive certain of the income from the property and to the stipulation that Edgar not predecease testator without leaving issue. The devise to Edgar was also subject to the condition that the land and any part thereof shall not be sold or encumbered for twenty-five years after the death of testator. The will was executed in 1913, when Edgar was sixteen years old. At that time the property was a working farm and testator made provisions in his will for several of his farm employees. The testator realized his son was only sixteen years old and would likely receive the farm when he was still a young man. Knowing Item IV of the will would give Edgar a fee simple title to the farm and desiring both to provide an in-

come for his wife and protect Edgar from losing his estate by inexperience, he attempted to restrict the alienation of the property. This shows his intent that Edgar would have the fee upon the death of testator. The words "in fee simple" are technical words and shall be given their technical meaning in the absence of a clear expression of a contrary intention in the will itself. *Olive v. Biggs*, 276 N.C. 445, 173 S.E. 2d 301 (1970).

Defendants contend that testator's use of the words "unless he shall die without leaving issue," followed by a contingent devise to testator's nieces and nephews, is such a clear expression. They rely upon these pertinent provisions of N.C.G.S. 41-4: "Every contingent limitation of any . . . will, made to depend upon the dying of any person . . . without issue . . . shall be held and interpreted a limitation to take effect when such person dies not having such . . . issue . . . living at the time of his death." The statute contains this condition: ". . . unless the intention of such limitation be otherwise, and expressly and plainly declared in the face of the . . . will creating it."

We hold the intent of E. B. Moore that the limitation is to take effect upon the death of testator is expressly and plainly declared on the face of the will and the statute is not applicable. If Edgar had predeceased testator without leaving issue, then the property would have gone to the contingent devisees. However, Edgar survived his father. The law favors early absolute vesting of estates, and in the interpretations of wills with conditional expressions, which render a testamentary devise defeasible, their operation should be confined to as early a period as the words of the will allow so that it becomes an absolute interest as soon as the language of the testator will permit. *Elmore v. Austin*, 232 N.C. 13, 59 S.E. 2d 205 (1950). Where there is ambiguity in a will whether the contingent limitation is to occur at the death of the testator or that of the first taker, the law favors the early vesting of estates and it will be held to occur at the death of the testator. Where it clearly appears from the words of the will and surrounding circumstances that the testator so intended, the statute, N.C.G.S. 41-4, will not apply. *Westfeldt v. Reynolds*, 191 N.C. 802, 133 S.E. 168 (1926).

Chief Justice Stacy in *Westfeldt* was construing a will with a like question to the one at bar. Testatrix in her will left half of

her property to Jenny Westfeldt, "to revert to Lulie Westfeldt in case of Jenny Fleetwood Westfeldt's decease." What the great Chief Justice said in *Westfeldt* is persuasive in our case:

> We now come to the first real battleground of debate between the parties, but from the reasoning in all the decisions on the subject, the question would seem to be involved in no serious doubt as to its proper solution. Jenny Fleetwood Westfeldt survived the testatrix. The limitation that her interest under the second devise is "to revert to Lulie Westfeldt in case of Jenny Fleetwood Westfeldt's decease," has reference to the death of Jenny Fleetwood Westfeldt during the lifetime of the testatrix. This not having occurred, the devise to Jenny Fleetwood Westfeldt, under the second clause, became absolute upon her survival of the testatrix. *Goode v. Hearne*, 180 N.C., 475; *Bank v. Murray*, 175 N.C., 62.

> It is the recognized rule of testamentary construction, here and elsewhere, that, in the absence of a contrary intention clearly expressed in the will, or to be derived from its context, read in the light of the surrounding circumstances, when a defeasible estate is created by devise, with no definite time fixed for the same to become absolute, and the alternative is either to adopt the time of the testator's death, or the death of the devisee, at which the estate may fairly be relieved of the contingency and become absolute, the time of the testator's death will ordinarily be adopted, unless prohibited by some statutory provision, as this makes for the early vesting of estates, which the law favors.

*Id.* at 806, 133 S.E. at 170-71.

The other half of the Westfeldt property was devised to Lulie Westfeldt, "and should Lulie Westfeldt die without heirs the property to go over to Overton Westfeldt Price's children." Here the Court held the statute (now N.C.G.S. 41-4) did not affect the general rule of interpretation (set out with respect to Jenny's devise) as a contrary intent clearly appeared upon the face of the will.

The testator, E. B. Moore, had three primary beneficiaries in mind as expressed in his will: his wife Beulah, who received his residuary estate and certain interests under Item IV of the will;

his son Edgar, who received the property described in Item IV subject to the interests of his mother; and his collateral heirs. It is proper to consider the state of his family and the nature of his property in determining testator's intent as expressed in his will. *Edens v. Williams, supra.* E. B. Moore intended his son to have the farms if he survived him. He intended his son to hold this property for at least twenty-five years after testator's death and use the income for the benefit of Beulah and Edgar. Testator knew that time changes all things and that after twenty-five years from his death it might be necessary and wise to sell the property or parts of it for the benefit of Edgar or Beulah. Without a fee simple title in Edgar, this was a practical impossibility.

Edgar's estate was limited by his surviving the testator. He did so. We hold Edgar took a fee simple title to the property described in Item IV at the death of his father, subject only to the interests of Beulah, Edgar's mother. She died 23 December 1948 and her interests in the subject property terminated at her death. Edgar Blackburn Moore now owns a fee simple title to the subject property and plaintiffs can convey the land described in the contract of sale by good, marketable fee simple title to defendant Hunter.

We agree with plaintiffs that the Court should not at this time determine matters beyond those raised by plaintiffs' complaint and Hunter's answer, and we will not undertake to determine the rights and interests of the Hardesty heirs as raised in their brief.

The judgment of the superior court ordering specific performance of the contract between plaintiffs and defendant Hunter is

Affirmed.

Judges PARKER and HILL concur.